

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00080-CR

_____

**KERRY WILLIAMS, APPELLANT**

V.

**THE STATE OF TEXAS, APPELLEE**

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2011-429,814; Honorable Bradley S. Underwood, Presiding

January 27, 2015

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Following a plea of not guilty, Appellant, Kerry Williams, was convicted by a jury of murder and sentenced to confinement for life.[1] In presenting this appeal, counsel has

---

[1] TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011).

filed an *Anders*[2] brief in support of a motion to withdraw. We grant counsel's motion and affirm.

In support of his motion to withdraw, counsel certifies he has conducted a conscientious examination of the record, and in his opinion, the record reflects no potentially plausible basis for reversal of Appellant's conviction. *Anders v. California*, 386 U.S. 738, 744-45, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *In re Schulman*, 252 S.W.3d 403, 406 (Tex. Crim. App. 2008). Counsel candidly discusses why, under the controlling authorities, the record supports that conclusion. *See High v. State*, 573 S.W.2d 807, 813 (Tex. Crim. App. 1978). Counsel has demonstrated he has complied with the requirements of *Anders* and *In re Schulman* by (1) providing a copy of the brief to Appellant, (2) notifying him of his right to review the record and file a *pro se* response if he desired to do so,[3] and (3) informing him of his right to file a *pro se* petition for discretionary review. *In re Schulman*, 252 S.W.3d at 408.[4] By letter, this Court granted Appellant an opportunity to exercise his right to file a response to counsel's brief, should he be so inclined. *Id.* at 409 n.23. Appellant did not file a response. Neither did the State favor us with a brief.

---

[2] *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

[3] Pursuant to *Kelly v. State*, 436 S.W.3d 313 (Tex. Crim. App. 2014), counsel provided a copy of the appellate record to Appellant.

[4] Notwithstanding that Appellant was informed of his right to file a *pro se* petition for discretionary review upon execution of the *Trial Court's Certification of Defendant's Right of Appeal*, counsel must comply with Rule 48.4 of the Texas Rules of Appellate Procedure which provides that counsel shall within five days after this opinion is handed down, send Appellant a copy of the opinion and judgment together with notification of his right to file a *pro se* petition for discretionary review. *In re Schulman*, 252 S.W.3d at 408 n.22 & 411 n.35. The duty to send the client a copy of the court of appeals's decision is an informational one, not a representational one. It is ministerial in nature, does not involve legal advice, and exists after the court of appeals has granted counsel's motion to withdraw. *Id.* at 411 n.33.

BACKGROUND

A transient lady in her forties with a history of schizophrenia was stabbed to death in a laundromat in the early morning hours of January 28, 1994. Her body was discovered by a patron who had arrived at the laundromat to wash his clothes. He called the police. Numerous photographs and fingerprints were taken at the crime scene. The victim's autopsy showed the cause of death was a single stab wound to the chest and the manner of death was a homicide. Initial testing of evidence in 1994 did not include DNA testing which was not prevalent at that time.[5] After a lengthy investigation, including multiple suspects who were eventually ruled out, the case went unsolved.

In June 2010, the cold case was assigned to a new detective for further review. The detective contacted a forensic scientist at the Texas Department of Public Safety laboratory to see if evidence from the crime was still stored. The detective learned that the evidence was still in the possession of the Department and it had been properly stored. In addition to other evidence collected in 1994, the detective specifically requested testing of the victim's fingernail clippings and her bloody jeans. The jeans had not previously been DNA tested.[6] The DNA results led to a new suspect, Appellant. At the time, he was serving a thirty-year sentence for a 2004 conviction for attempted aggravated sexual assault.

---

[5] In 1994, the victim's fingernail clippings, hair, oral swabs, vaginal swabs, anal swabs, blood and a hair recovered near the victim were tested.

[6] According to the evidence, the victim was murdered with her jeans on and they were removed afterwards.

In October 2010, the detective assigned to the case and another law enforcement officer interviewed Appellant. The interview was videotaped. Appellant admitted that at the time of the victim's murder, when he was nineteen, he lived in a doped-up state. He did not recognize photos of the victim but conceded he must have had contact with her if his DNA was found on her. However, he believed his contact with her to be of a sexual nature and adamantly denied killing her. After the officer explained that the DNA found on the victim was not from a sexual encounter, Appellant could not offer an explanation as to how his DNA came to be on the victim. Shortly after the interview, a search warrant was issued for Appellant's blood.

At trial, the Department of Public Safety forensic scientist testified about DNA testing procedures and how data is interpreted from a Genetic Analyzer. He detected a partial profile of foreign DNA in the fingernail clippings of the victim's left hand that was strong enough to make a comparison. Regarding the jeans, the scientist observed what could be blood below the knees which caused him to believe the suspect grabbed the jeans when he pulled them off the victim. Using mini tape lifts, he touched the jeans, avoiding the bloody areas which he assumed belonged to the victim, to pick up skin cells. Again, he found foreign DNA sufficient to create a partial profile. Using Appellant's blood for comparison, test results showed he could not be excluded as a contributor of the foreign DNA from the fingernail clippings of the victim's left hand, as well as the victim's jeans. Although the fingernail clippings did show a third contributor, that sample was inconclusive. The DNA on the bloody jeans was, however, from the victim and Appellant without any other contributors. The scientist reported his results to

the detective. Results were then submitted to the Lubbock County District Attorney's office and Appellant was indicted for the victim's murder.

Appellant was tried by a jury. Numerous witnesses testified over the course of a four-day trial. The medical examiner who testified about the victim's autopsy was not the same medical examiner that had performed the autopsy in 1994. The jury returned a guilty verdict and after hearing punishment evidence, which included three prior convictions, one when Appellant was a juvenile, and all three for sexual offenses, assessed punishment at confinement for life.

By the *Anders* brief, counsel evaluates all the proceedings against Appellant during the guilt/innocence and punishment phases of trial. He raises arguable error in the trial court's admission of the medical examiner's testimony over defense counsel's objection that the medical examiner was not qualified to testify to an autopsy he did not perform. Counsel then concludes based on Rules 702, 703 and 705(a) of the Texas Rules of Evidence and this Court's opinion in *Martinez v. State*, 311 S.W.3d 104, 111-12 (Tex. App.—Amarillo 2010, pet. ref'd), that there is no error in the trial court's ruling on counsel's objection. His evaluation of the entire trial, including the court's charge and the punishment proceedings, reveals no other potential errors, much less reversible error.

We have independently examined the entire record to determine whether there are any non-frivolous issues which might support the appeal. *See Penson v. Ohio*, 488 U.S. 75, 80, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988); *In re Schulman*, 252 S.W.3d at 409; *Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). We have found no

5

such issues. *See Gainous v. State*, 436 S.W.2d 137, 138 (Tex. Crim. App. 1969). After reviewing the record and counsel's brief, we agree with counsel that there is no plausible basis for reversal. *See Bledsoe v. State*, 178 S.W.3d 824, 826-27 (Tex. Crim. App. 2005).

Accordingly, the trial court's judgment is affirmed and counsel's motion to withdraw is granted.

Patrick A. Pirtle
Justice

Do not publish.